# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 11, 2004 Session

## BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE v. H. OWEN MADDUX

### Appeal as of Right from the Chancery Court for Hamilton County
### No. 02-1061      William M. Dender, Special Chancellor

---

### No. M2003-01136-SC-R3-BP - Filed August 27, 2004

---

A hearing panel of the Board of Professional Responsibility found that H. Owen Maddux had wilfully and deliberately converted funds from his law firm. In addition to other sanctions, the hearing panel suspended Maddux from the practice of law for a period of thirty days. The Chancery Court for Hamilton County affirmed the judgment of the hearing panel but imposed additional sanctions. Disciplinary Counsel appealed to this Court, contesting only the sufficiency of the thirty-day suspension. We hold that the thirty-day suspension is appropriate. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and WILLIAM M. BARKER, JJ., joined.

James A. Vick, Nashville, Tennessee, for the Appellant, Board of Professional Responsibility of the Supreme Court of Tennessee.

Michael E. Callaway, Cleveland, Tennessee, for the Appellee, H. Owen Maddux.

### OPINION

#### Factual and Procedural Background

H. Owen Maddux received his license to practice law in Tennessee in 1974. In 1991, Maddux joined a Chattanooga law firm as a partner. Although no formal partnership agreement was ever executed, it is undisputed that the partners agreed that attorney fees generated from the partnership would constitute partnership income and would be paid into the partnership account.

In 1994, the relationship between the partners became strained, and disagreements arose as to the partners' respective capital accounts. As a result of these disputes, the senior partner distributed a memorandum on October 21, 1994, stating that the partners would no longer receive

monthly draws. Upon receipt of this memorandum, one partner withdrew from the partnership. The remaining partners, including Maddux, continued to practice pursuant to the same unwritten agreement. Despite the memorandum, the partners continued to take monthly draws until the decision to dissolve the partnership was made in January 1995.

In January of 1995, Maddux's partners discovered that he had taken approximately $4,700 in partnership income without their knowledge or consent. The partners asked Maddux if he had taken any additional partnership funds. Maddux stated that he had not. In July 1996, however, the partners discovered that Maddux had taken an additional $20,000 in partnership funds. On approximately fifty occasions over the three-year period from December 1994 through November 1997, Maddux took fees paid to him by clients for services rendered before the partnership's dissolution and used the funds to pay personal expenses. The total amount of the converted funds exceeded $92,500. He claimed that he took the money as leverage for negotiating with his partners.

On July 13, 1996, the partners filed an ethical complaint against Maddux with the Board of Professional Responsibility ("the Board"). The present disciplinary proceedings against Maddux arose out of this complaint. The partners also filed a civil lawsuit against Maddux and obtained a judgment against him for approximately $241,500, which included prejudgment interest on the converted funds, attorney's fees, and punitive damages. No criminal charges were ever brought against Maddux.

On February 7, 2001, a Petition for Discipline was filed against Maddux pursuant to Rule 9, section 8.2 of the Rules of the Supreme Court of Tennessee.[1] A hearing was conducted on the petition for discipline on August 29, 2002. At the hearing, Maddux admitted most of the allegations against him and acknowledged that his actions were wrong and were done with a selfish motive. Maddux testified that he had never before been disciplined by the Board and that he had never been found guilty of an offense involving any type of inappropriate professional conduct. In addition, several local attorneys testified on his behalf, discussing his good reputation and his service to the community.

The hearing panel found that Maddux had violated the following Disciplinary Rules: DR 1-102(A)(1), (3), (4), (5), and (6).[2] Accordingly, the panel suspended Maddux from the practice of law

---

[1] The current version of Supreme Court Rule 8, setting out the Rules of Professional Conduct, went into effect on March 1, 2003. Pursuant to the Transitional Rules Governing the Implementation of the Tennessee Rules of Professional Conduct, those rules generally "have prospective application only[.]" Due to the time period involved in the pending case, our analysis is based upon the Code of Professional Responsibility set out in the previous version of Rule 8.

[2]       DR 1-102.        Misconduct
         (A) A lawyer shall not:
         (1) Violate a Disciplinary Rule.
                  . . .
         (3) Engage in illegal conduct involving moral turpitude.

(continued...)

for thirty days and ordered him to submit for publication an article to the Tennessee Bar Association and the Hamilton County Bar Association, discussing partnership law and the pitfalls of partnership dissolution.[3] In addition, Maddux was ordered to perform one hundred hours of community service within two years, to reimburse the Board for all costs and expenses resulting from the disciplinary hearing, and to comply with the civil judgment against him.

Disciplinary Counsel filed a writ of certiorari in the Chancery Court for Hamilton County, arguing that the thirty-day suspension imposed by the hearing panel was too lenient. Retired Judge William M. Dender was designated by the Chief Justice to preside over the disciplinary proceeding in the chancery court, and a trial was conducted on March 20, 2003.

At trial, Maddux acknowledged that his conduct warranted discipline. He testified that he was willing to do "[w]hatever was required" in terms of discipline.

In its judgment entered on April 10, 2003, the trial court adopted the hearing panel's findings of fact and conclusions of law. The trial court also found that Maddux was not a threat to society and that he lacked criminal intent because he never intended to keep the converted funds permanently. The court affirmed the sanctions imposed by the hearing panel, but it also imposed additional sanctions. The court ordered that Maddux be placed on one year of probation following his thirty-day suspension and that Maddux's law license be suspended for an additional six months in the event he violated one of the terms of his probation. In addition, the court ordered that Maddux's practice be monitored by another member of the bar and that Maddux not "receive, disburse, handle nor have access to any client funds, receipts, accounts, or other property, except with the co-endorsement and/or co-signature of the monitoring attorney."

Disciplinary Counsel has brought this direct appeal pursuant to Supreme Court Rule 9 to contest the sufficiency of the thirty-day suspension.

**Analysis**

Disciplinary Counsel argues that a thirty-day suspension is too lenient under the circumstances of this case. He points to cases from other jurisdictions that support his position that Maddux's conduct warrants a lengthy suspension if not disbarment. Maddux, on the other hand, asks this Court to impose some lesser form of discipline or, in the alternative, to affirm the judgments of the hearing panel and chancery court. He asserts that the discipline imposed by the hearing panel and chancery court is proportionate and just under the circumstances. However, he

---

[2](...continued)
        (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
        (5) Engage in conduct that is prejudicial to the administration of justice.
        (6) Engage in any other conduct that adversely reflects on his fitness to practice law.

[3] While this sanction is not one that is commonly imposed by hearing panels, the parties do not contest its validity. Therefore, we express no opinion about the propriety of this sanction.

asks us to consider that he has lived with the expectation of discipline for almost a decade, in part due to Disciplinary Counsel's decision to file the petition for discipline approximately four and one-half years after the complaint was filed.

Our review in disciplinary matters is de novo upon the record of the trial court with a presumption that the trial court's findings are correct unless the preponderance of the evidence is otherwise. Galbreath v. Bd. of Prof'l Responsibility, 121 S.W.3d 660, 665 (Tenn. 2003). Having thoroughly and carefully examined the record of the trial court, which includes the transcript of evidence before the hearing panel, we conclude that the thirty-day suspension imposed by the hearing panel and trial court is an appropriate sanction.

We must evaluate each instance of attorney discipline in light of its particular facts and circumstances. See, e.g., Tenn. Sup. Ct. R. 9, § 8.4 (indicating that the appropriateness of the recommended punishment should be viewed under the circumstances of each particular case); Ramsey v. Bd. of Prof'l Responsibility, 771 S.W.2d 116, 123 (Tenn. 1989) (looking at "all of the circumstances" of the particular case in deciding the appropriate sanction). At the same time, however, we also must consider the sanctions that have been imposed in prior cases that present similar circumstances so as to maintain consistency and uniformity in disciplinary proceedings. See, e.g., Tenn. Sup. Ct. R. 9, § 8.4 (stating that the recommended punishment should be reviewed "with a view to attaining uniformity of punishment throughout the state"); Bd. of Prof'l Responsibility v. Bonnington, 762 S.W.2d 568, 570 (Tenn. 1988) (recognizing an "objective of achieving uniformity of punishment in disciplinary proceedings"). While this case appears to be the first of its kind in Tennessee, the parties point to decisions from other jurisdictions that have addressed the question of the proper sanction in cases involving an attorney's misappropriation of fees from his or her own law firm. See generally Nebraska ex rel. Neb. State Bar Ass'n v. Frederiksen, 635 N.W.2d 427, 433-36 (Neb. 2001) (discussing cases from other jurisdictions that have addressed this issue). Courts in these jurisdictions have imposed a variety of sanctions, ranging from no sanction to disbarment, and their decisions show that no one sanction is necessarily more appropriate than any other in these types of cases. See id.

Under the American Bar Association's Standards for Imposing Lawyer Sanctions, which the Board has adopted for disciplinary matters, disbarment is an appropriate sanction for conduct involving dishonesty, fraud, deceit, or misrepresentation when the lawyer engages in serious criminal conduct or any other intentional conduct that "seriously adversely" reflects on the lawyer's fitness to practice law. See Standards for Imposing Lawyer Sanctions § 5.11 (Am. Bar Ass'n ed., 1986). The trial court found that Maddux lacked criminal intent, and the evidence does not preponderate against this finding. Both the hearing panel and trial court concluded that Maddux engaged in conduct that adversely reflected upon his fitness to practice law. Neither tribunal, however, found that his conduct "seriously adversely" reflected upon his fitness, and our review of the record confirms their conclusions. Therefore, disbarment is not an appropriate sanction in this case. For the same reasons, suspension is not an appropriate baseline sanction in this case. Suspension is appropriate only when "a lawyer knowingly engages in criminal conduct . . . that seriously adversely

reflects on the lawyer's fitness to practice." See Standards for Imposing Lawyer Sanctions § 5.12 (Am. Bar Ass'n ed., 1986).

Section 5.13 of the Standards states that "[r]eprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law." Maddux's misappropriation of his law firm's funds clearly constitutes such conduct. The hearing panel specifically found as much when it concluded that Maddux's misappropriation of his law firm's funds was "willful and deliberate" and that his conduct violated DR 1-102(A)(4) and DR 1-102(A)(6).[4] The trial court adopted the hearing panel's findings of fact and conclusions of law in its judgment. The evidence does not preponderate against the trial court's findings. Therefore, we conclude that a reprimand would be the appropriate baseline sanction in this case.

Our review, however, does not end here. We also must consider any aggravating or mitigating circumstances that may exist. Aggravating and mitigating circumstances are any considerations or factors that may justify an increase or a reduction in the degree of discipline to be imposed. Standards for Imposing Lawyer Sanctions §§ 9.21, 9.31 (Am. Bar Ass'n ed., 1986).

Disciplinary Counsel relies on the following aggravating factors: 1) substantial experience in the practice of law; 2) multiple offenses; 3) a pattern of misconduct; and 4) dishonest or selfish motive. The record indicates that Maddux had been practicing law for twenty years before engaging in the conduct at the center of this disciplinary proceeding. It also shows that he converted partnership funds on approximately fifty occasions over a three-year period. These funds totaled over $92,500. Moreover, Maddux admitted before the hearing panel that his acts were done with a selfish motive. Consequently, each of these factors justifies an increase in the degree of discipline to be imposed.

Maddux asks this Court to consider a number of circumstances in mitigation. Some of these circumstances actually weigh against Maddux. For instance, Maddux lists the vulnerability of the victim as a mitigating factor, suggesting that the law firm was not vulnerable. However, the fiduciary duty of loyalty that exists between partners and the trust that law firms must place in their attorneys to act as representatives of the firm caused the law firm to be vulnerable with respect to Maddux's misconduct. See Florida Bar v. Arcia, 848 So. 2d 296, 298 (Fla. 2003). Accordingly, the law firm's vulnerability should be treated as an aggravating factor. See Standards for Imposing Lawyer Sanctions § 9.22(h) (Am. Bar Ass'n ed., 1986). Other circumstances identified by Maddux are neither aggravating nor mitigating factors. Maddux asks us to consider the restitution payments he has made to his former partners as a mitigating factor. These restitution payments, however, were compelled by court order, and such restitution should not be considered as either aggravating or mitigating. See Standards for Imposing Lawyer Sanctions § 9.4(a) (Am. Bar Ass'n ed., 1986). We

---

[4] DR 1-102(A)(4) provides that a lawyer shall not "[e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation," and DR 1-102(A)(6) provides that a lawyer shall not "[e]ngage in any other conduct that adversely reflects on his fitness to practice law."

consider some of the mitigating circumstances relied upon by Maddux, such as how the misappropriated fees were used, to be irrelevant. Others, such as physical or mental disability or impairment, find no support in the record and consequently do not apply under the facts of this case.

Among the list of circumstances Maddux asks this Court to consider, therefore, we conclude that only the following factors justify a reduction in the degree of discipline to be imposed in the present case: 1) absence of prior disciplinary record; 2) character or reputation; 3) cooperative attitude toward proceedings; and 4) delay in disciplinary proceedings. Maddux had never been disciplined by the Board prior to the present proceedings. Moreover, several local attorneys testified to Maddux's good reputation and his service to the community. Maddux demonstrated a cooperative attitude throughout the proceedings by admitting most of the allegations against him, fully acknowledging his wrongdoing, and testifying that he was willing to do "[w]hatever was required" in terms of discipline. Furthermore, Disciplinary Counsel took over four years to file a Petition of Discipline in this matter, and it has now been nearly eight years since the ethical complaint against Maddux was entered with the Board.

Maddux's conduct constitutes a serious violation of the disciplinary rules of this state. In light of the severity of his offense and the aggravating factors raised by the Board, some amount of suspension is warranted. However, the applicable mitigating factors justify a limited period of suspension. We hold that the evidence does not preponderate against the trial court's findings, and we conclude that the thirty-day suspension imposed by the hearing panel and trial court is an appropriate sanction. Therefore, we affirm the action of the hearing panel and trial court with respect to this sanction.

### Conclusion

We conclude that the thirty-day suspension imposed by the hearing panel and trial court is a fair and proportionate sanction under the circumstances of the present case. The parties do not contest the appropriateness of the other sanctions imposed by either the hearing panel or the trial court, and we therefore express no opinion about the propriety of those sanctions. Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are taxed against the Board of Professional Responsibility.

_____
JANICE M. HOLDER, JUSTICE