# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 9, 2017 Session

## IN RE: PAUL JULIUS WALWYN, BPR #018263

**Review of Board of Professional Responsibility Panel
No. 2015-2491-5-WM**

_____

**No. M2016-01507-SC-BAR-BP – Filed August 4, 2017**

_____

The Board of Professional Responsibility ("Board") initiated disciplinary proceedings against attorney Paul Julius Walwyn based on a client's complaint of professional misconduct.  A hearing panel ("Panel") determined that Mr. Walwyn had violated the Rules of Professional Conduct ("RPC") and ultimately entered "Findings of Fact, Conclusions of Law and Amended Judgment of the Hearing Panel" ("Amended Judgment") imposing a public censure with a practice monitor for one year and six additional hours of continuing legal education ("CLE") on subjects related to the management of a law practice and/or client communication.  Mr. Walwyn did not appeal the Amended Judgment to the trial court.  The Board petitioned this Court for an order enforcing the Panel's Amended Judgment.  Pursuant to Tennessee Supreme Court Rule 15.4(b) and (c), we determined that the punishment imposed by the Panel appeared inadequate and proposed that it be increased.  Mr. Walwyn subsequently requested oral argument, which we granted.  We now consider whether the punishment imposed by the Panel is appropriate under the circumstances of this case and is in uniformity with prior disciplinary decisions in this state.  Following a thorough review of the record and the law, we conclude that it is not.  Therefore, we modify the Panel's Amended Judgment to impose a one-year suspension from the practice of law, with six months to be served on active suspension and six months to be served on probation with a practice monitor.  The duties and obligations in relation to the practice monitor shall be enforced in accordance with the Panel's Amended Judgment.  We also impose six additional hours of CLE on subjects related to the management of a law practice and/or client communication.

### Tenn. Sup. Ct. R. 9, § 15.4; Judgment of the Hearing Panel Modified

ROGER A. PAGE, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, SHARON G. LEE, and HOLLY KIRBY, JJ., joined.

Connie Reguli, Brentwood, Tennessee, for the appellant, Paul Julius Walwyn.

William C. Moody, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

# OPINION

## I. Facts and Procedural History

This case arose from Mr. Walwyn's representation of Jonathan Gutierrez in a first degree murder trial in 2011. At the time, Mr. Walwyn had been licensed to practice law since 1996 and had been practicing criminal law for fifteen to sixteen years. Following Mr. Gutierrez's convictions for first degree murder and four counts of aggravated assault, he was sentenced to life in prison and four consecutive four-year sentences, for a total effective sentence of life plus sixteen years. Mr. Walwyn filed a motion for new trial, which was subsequently denied on September 30, 2011. However, Mr. Walwyn did not file a notice of appeal in Mr. Gutierrez's case until May 8, 2015, even though the Tennessee Rules of Appellate Procedure require that a notice of appeal be filed within thirty days.[1] The trial court appointed new counsel, Mr. Richard Strong, on June 3, 2015. The Tennessee Court of Criminal Appeals subsequently accepted the late-filed notice of appeal in the interest of justice. *See* Tenn. R. App. P. 4(a).

On September 24, 2015, the Board filed a Petition for Discipline against Mr. Walwyn following a complaint of professional misconduct filed by Mr. Gutierrez on January 22, 2015. In the complaint, Mr. Gutierrez stated:

> Mr. Walwyn filed a Motion for New Trial, and I was transported back to court in Davidson County a couple of times until the court denied my request for a new trial. Mr. Walwyn assured me that he would be filing the appeal soon thereafter.

---

[1] At the time the notice of appeal was filed, Rule 4(a) of the Tennessee Rules of Appellate Procedure read in part:

> In an appeal as of right to the Supreme Court, Court of Appeals or Court of Criminal Appeals, the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from; however, in all criminal cases the "notice of appeal" document is not jurisdictional and the filing of such document may be waived in the interest of justice.

Tenn. R. App. P. 4(a) (2015).

Since that time[,] I have contacted Mr. Walwyn several times via[] written correspondence and telephone[] to inquire about the status of my appeal[] and to request copies of my court records. I also had my mother to call Mr. Walwyn[] and meet with him at his office regarding the status of my appeal and obtaining my court records. Each time Mr. Walwyn assured me that everything was okay and that he would be sending me copies of my court records.

I never received any of my court records[,] and, eventually[,] Mr. Walwyn stopped accepting my calls[,] and he has been unable to be reached by my family. Mr. Walwyn also has refused to acknowledge or respond to any of my written correspondences. As of this date[,] it appears that Mr. Walwyn may have completely abandoned me and my case.

. . . I have tried repeatedly in every way I know how to find out about the status of my appeal. I still have no idea what the decision is, or if the court has even made a decision yet. Please help me find out what the status of my appeal is[] or require Mr. Walwyn to properly inform me and to forward a copy of my court records to me. Thank you for your time and cooperation in this matter.

Based on this complaint, the Board alleged violations of Tennessee Rules of Professional Conduct 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 1.16 (Declining or Terminating Representation), and 8.4(a), (c), and (d) (Misconduct). *See* Tenn. Sup. Ct. R. 8. On May 17, 2016, a hearing panel that was appointed by the Board pursuant to Tennessee Supreme Court Rule 9, section 6.4 held a hearing on the matter. At the Panel hearing, Mr. Walwyn asserted that he initially intended to file a timely notice of appeal. When he discovered that he had missed the filing deadline, he informed Mr. Gutierrez of the missed deadline but told him that he would still be entitled to an appeal.

Due to a recorded interview with the television show *Gangland* and the subsequent admission of that interview at Mr. Gutierrez's trial, Mr. Walwyn did not believe he should represent Mr. Gutierrez on appeal in case he needed to testify about the circumstances of the interview for appellate purposes. Mr. Walwyn also explained that he no longer represented clients on appeal and that the appellate issues in this case would be difficult to handle because of the television interview. Therefore, Mr. Walwyn asserted that in 2012 or 2013, he began looking for a good attorney with appellate experience to replace him on appeal. In 2013 or 2014, Mr. Walwyn began talking to attorney Richard Strong, who had left the district public defender's office in 2013, about taking the case and eventually decided Mr. Strong was the best attorney to be appointed to represent Mr. Gutierrez. After this decision was made, Mr. Walwyn informed Mr.

Gutierrez's family that Mr. Strong was willing to represent Mr. Gutierrez on appeal and provided them with Mr. Strong's telephone number. Mr. Walwyn explained that during the three-and-a-half-year delay, he also spoke with three or four assistant district attorneys about the matter and that none of them opposed Mr. Walwyn's treatment of the appeal.

Mr. Walwyn acknowledged that "it took a long time[.] [I]t took longer than it should[.]" However, Mr. Walwyn emphasized that he did not abandon Mr. Gutierrez, stating that he and Mr. Gutierrez "were in contact sporadically through the whole process." Mr. Walwyn explained that between filing the motion for new trial in 2011 and filing the notice of appeal in 2015, he videoconferenced with Mr. Gutierrez on two or three occasions and spoke with him on the telephone "a couple of times." Mr. Walwyn asserted that he also spoke with Mr. Gutierrez's mother. Mr. Walwyn could specifically remember sending one letter to Mr. Gutierrez. Mr. Walwyn emphasized that Mr. Gutierrez never asked the court for another attorney, that Mr. Gutierrez was aware of Mr. Walwyn's plan to choose another attorney, and that their attorney/client relationship was amicable. Mr. Walwyn also asserted that the long wait benefited Mr. Gutierrez because he obtained appropriate counsel for his appeal and may have benefited from some changes in the law regarding the use of media in the courtroom.

Regarding his practice in general, several character witnesses testified that Mr. Walwyn has a good reputation in the legal community.[2] Mr. Walwyn explained that he is in court every day and that he is in his office "Monday through Thursday probably two to three hours on average." He also meets with clients and works in his office on Sundays from 8:30 a.m. until 2:00 p.m. During his representation of Mr. Gutierrez, Mr. Walwyn had a case load of approximately 400 open files. At the time of the hearing, Mr. Walwyn had approximately 250 open case files, 100 of which Mr. Walwyn was merely tracking after a guilty plea or conviction was entered to ensure his clients were complying with post-judgment conditions. Mr. Walwyn conceded that in 2011, he did not calendar deadlines or use a tickler system; instead, he put notations in files. However, currently, his assistant maintains an electronic calendar for his office and checks two calendars on the Davidson County court clerk's website. He also utilizes three internal paper calendars in his office. Mr. Walwyn now uses a tickler system to remind him when things need to be filed, and someone in his office looks at active upcoming cases weekly to review and verify dates or information.

Prior to this disciplinary hearing, Mr. Walwyn had been disciplined on five separate occasions. In 2003, he received a private reprimand for failing to file a proposed

---

[2] These witnesses testified in a prior disciplinary action, and the transcript of their testimony was admitted as evidence in this hearing.

order for four years. In 2004, he received a public censure for filing a proposed order late in a child support and custody case, filing a notice of appeal in a criminal case five days late, filing an appellate brief sixty days late, and failing to file a timely petition to this Court, resulting in the petition being denied as untimely. In 2006, he received a public censure for failing to timely respond to Disciplinary Counsel. As a condition of his guilty plea, Mr. Walwyn was required to undergo a law practice management evaluation by another attorney; audit the law practice management course at the Nashville School of Law; and complete six additional hours of CLE hours on subjects related to client relations, the management of a law practice, the Rules of Professional Conduct, or disciplinary actions of the Board of Professional Responsibility. In 2006, Mr. Walwyn received a private informal admonition for neglecting to have a default judgment set aside and for failing to provide an affidavit to Disciplinary Counsel. Finally, in December 2015, Mr. Walwyn was suspended from the practice of law for six months, with thirty days to be served on active suspension and five months to be served on probation. *See Walwyn v. Bd. of Prof'l Resp.*, 481 S.W.3d 151, 161-62, 171 (Tenn. 2015). Mr. Walwyn was still completing this probation at the time of his disciplinary hearing in this case.

After considering all of the evidence, the Panel concluded that Mr. Walwyn had violated Rule 1.1 (Competence) by not exhibiting the skill, thoroughness, or preparation necessary when representing Mr. Gutierrez; Rule 1.3 (Diligence) by failing to file a timely notice of appeal and by waiting three and a half years to file a motion to accept a delayed appeal; Rule 1.4 (Communication) by failing to keep Mr. Gutierrez informed about the status of his case; and Rule 8.4(a) and (d) (Misconduct) by violating the Rules of Professional Misconduct and by engaging in conduct what was prejudicial to the administration of justice with the above stated conduct. *See* Tenn. Sup. Ct. R. 8. Based on these findings and consideration of the applicable aggravating and mitigating circumstances, the Panel concluded that Mr. Walwyn should be suspended from the practice of law for one year and that the entire year should be suspended and served on probation under the supervision of a practice monitor. The Panel also concluded that Mr. Walwyn should complete six additional hours of CLE on subjects related to the management of a law practice or client communication. However, because Tennessee Supreme Court Rule 9, section 12.2(a) states that "[a] suspension order must result in some cessation of the practice of law for not less than thirty days," the Board filed a motion to alter or amend the Panel's judgment. The Panel subsequently filed an amended judgment reducing Mr. Walwyn's discipline to a public censure with the conditions that he be supervised by a practice monitor for one year and that he complete six additional hours of CLE on subjects related to the management of a law practice and/or client communication.

Mr. Walwyn did not appeal the decision of the Panel. *See* Tenn. Sup. Ct. R. 9, § 33. The Board filed a Notice of Submission, Protocol Memorandum, and Order of

Enforcement on July 20, 2016, seeking approval and enforcement of the Panel's decision. *See* Tenn. Sup. Ct. R. 9, § 15.4(b). On July 27, 2016, this Court entered an order proposing to increase Mr. Walwyn's punishment because it seemed inadequate. *See* Tenn. Sup. Ct. R. 9, § 15.4(c). Mr. Walwyn subsequently submitted an appellate brief and requested oral argument. *See* Tenn. Sup. Ct. R. 9, § 15.4(c). We now consider the case at bar.

## II. Standard of Review

The Tennessee Supreme Court is the source of authority for the Board of Professional Responsibility and its functions. *In re Vogel*, 482 S.W.3d 520, 530 (Tenn. 2016) (citing *Long v. Bd. of Prof'l Resp.*, 435 S.W.3d 174, 178 (Tenn. 2014)). "As a part of our duty to regulate the practice of law in this state, we have the ultimate disciplinary responsibility for violations of the rules governing our profession." *Hughes v. Bd. of Prof'l Resp.*, 259 S.W.3d 631, 640 (Tenn. 2008) (citing *Doe v. Bd. of Prof'l Resp.*, 104 S.W.3d 465, 469-70 (Tenn. 2003)). We examine disciplinary judgments pursuant to this Court's "inherent power" and "essential and fundamental right" to enforce the rules regulating the practice of law. *Vogel*, 482 S.W.3d at 530 (internal quotation marks omitted) (quoting *Hughes*, 259 S.W.3d at 640).

Tennessee Supreme Court Rule 9, section 15 governs the Board's initiation, investigation, and hearing procedures in disciplinary matters. If the Disciplinary Counsel for the Board decides to prosecute formal charges against an attorney, the matter will be decided by a hearing panel. *See* Tenn. Sup. Ct. R. 9, § 15.2(a). At the hearing, "Disciplinary Counsel must prove the case by a preponderance of the evidence." Tenn. Sup. Ct. R. 9, § 15.2(h). After the hearing, the hearing panel submits "its findings and judgment, in the form of a final decree of a trial court, to the Board within thirty days after the conclusion of the hearing." *See* Tenn. Sup. Ct. R. 9, § 15.3(a). After the hearing panel's judgment has been entered, the disciplined attorney can either appeal the decision, *see* Tenn. Sup. Ct. R. 9, § 33, or accept the judgment. If the punishment is disbarment, suspension, or public censure and the attorney does not appeal the decision, the Board must file in this Court a Notice of Submission, the judgment, a proposed Order of Enforcement, and a Protocol Memorandum. *See* Tenn. Sup. Ct. R. 9, § 15.4(b).

This case is now before us because Mr. Walwyn did not appeal the Panel's amended judgment, and the Board seeks enforcement of the proposed punishment. Pursuant to Rule 9, section 15.4, it is this Court's duty to "review the recommended punishment provided in such judgment or settlement with a view to attaining uniformity of punishment throughout the State and appropriateness of punishment under the circumstances of each particular case." Tenn. Sup. Ct. R. 9, § 15.4(b). If we conclude that the punishment imposed is inadequate or excessive, we must:

issue an order advising the Board and the respondent attorney that it proposes to increase or to decrease the punishment. If the Court proposes to increase the punishment, the respondent attorney shall have twenty days from the date of the order to file a brief and request oral argument; if the Court proposes to decrease the punishment, the Board shall have twenty days from the date of the order within which to file a brief and request oral argument. Reply briefs shall be due within twenty days of the filing of the preceding brief. If a party requests oral argument, the Court may grant it. Upon termination of such proceedings as are requested, the Court may modify the judgment of the hearing panel or the settlement in such manner as it deems appropriate.

Tenn. Sup. Ct. R. 9, § 15.4(c). Given our inherent authority to enforce the disciplinary rules for the legal profession, the mandate that we review the recommended punishment with a "view to attaining uniformity of punishment," and our ability to modify the judgment of the hearing panel as we deem appropriate, we conclude that our standard of review as to the recommended punishment is de novo. Tenn. Sup. Ct. R. 9, § 15.4(b)-(c); *Hughes*, 259 S.W.3d at 640.

### III. Analysis

The primary issue in this case is whether the punishment imposed by the Panel was appropriate under the specific circumstances of this case and was uniform with other disciplinary decisions in similar circumstances. In his brief and during oral argument, Mr. Walwyn argued that the procedure utilized in this review violated his procedural and substantive due process rights. Therefore, we will first address those assertions.

### A. Due Process

Both the United States and Tennessee Constitutions protect the right to due process of law. Section 1 of the Fourteenth Amendment to the United States Constitution provides, "No State shall make or enforce any law which . . . deprive[s] any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. Article I, section 8 of the Tennessee Constitution states, "[N]o man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." TN Const. Art. 1, § 8. We have determined that this provision of the Tennessee Constitution is "synonymous" with the Due Process Clause of the Fourteenth Amendment. *Gallaher v. Elam*, 104 S.W.3d 455, 463 (Tenn. 2003) (citing *Riggs v. Burson*, 941 S.W.2d 44, 51 (Tenn. 1997)). Mr. Walwyn asserts that both his procedural and substantive due process rights have been violated.

## 1. Procedural Due Process

Mr. Walwyn first argues that his procedural due process rights have been violated because he did not receive adequate notice of the proposed punishment in his case. However, this argument has no merit.

The overarching principle of procedural due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted); *see Keisling v. Keisling*, 92 S.W.3d 374, 377 (Tenn. 2002) (citations omitted). Or, stated another way, procedural due process ensures that litigants are "given an opportunity to have their legal claims heard at a meaningful time and in a meaningful manner." *Lynch v. City of Jellico*, 205 S.W.3d 384, 391 (Tenn. 2006). Mr. Walwyn was given notice of the alleged violations of the Rules of Professional Conduct when the Board filed a petition for discipline. Furthermore, Tennessee Supreme Court Rule 9, section 15.4(a) states in part, "In determining the appropriate type of discipline, the hearing panel shall consider the applicable provisions of the ABA Standards for Imposing Lawyer Sanctions." Tenn. Sup. Ct. R. 9, § 15.4(a). The American Bar Association ("ABA") standards, therefore, provide notice of a proposed range of punishment for attorneys, along with considerations regarding aggravating and mitigating factors, based on the particular circumstances of a given case. The text of Rule 9, section 15.4 provided Mr. Walwyn with notice of this Court's duty to review the recommended punishment "with a view to attaining uniformity" and with its authority to increase or decrease the punishment as deemed appropriate to achieve that purpose. And, as required by Rule 9, section 15.4, we entered an order providing Mr. Walwyn with specific notice of our intent to consider increasing his punishment. *See id.* at 15.4.

As such, Mr. Walwyn received adequate notice of his range of possible punishment, and his procedural due process rights were not violated by the procedure this Court used in reviewing and increasing Mr. Walwyn's disciplinary sanctions.

## 2. Substantive Due Process

Mr. Walwyn also argues that this Court's review and modification of the Panel's decision violates his substantive due process rights. Specifically, Mr. Walwyn argues that the type of review this Court is utilizing in this case, *see id.* at § 15.4(b)–(c), is constitutionally oppressive because it occurs after he has already decided not to appeal the Panel's decision to the trial court. *See id.* at § 33. Mr. Walwyn also argues that this type of review violates his right of access to the courts.

Substantive due process, unlike procedural due process, "bars oppressive government action regardless of the fairness of the procedures used to implement the action." *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 409 (Tenn. 2013) (citing *Lynch*, 205 S.W.3d at 391–92). Substantive due process has been used to protect rights such as the right to marry, have children, and make child-rearing decisions. *Lynch*, 205 S.W.3d at 391–92 (citations omitted). "Substantive due process claims may be divided into two categories: (1) deprivations of a particular constitutional guarantee and (2) actions by the government which are 'arbitrary[] or conscience[-]shocking in a constitutional sense.'" *Id.* at 392 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992); *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997)).

With these principles in mind, we conclude that our review of Mr. Walwyn's disciplinary sanction in this case does not violate his substantive due process rights. While the practice of law and its regulation are certainly important, it simply does not rise to the same level as those rights that have been identified by state and federal courts as "implicit in the concept of ordered liberty" so as to trigger substantive due process concerns. *Palko v. Connecticut,* 302 U.S. 319, 325 (1937), *overruled on other grounds by Benton v. Maryland,* 395 U.S. 784 (1969). Indeed, in Tennessee, the practice of law is a privilege and not a right. *Murphy v. Bd. of Prof'l Resp.*, 924 S.W.2d 643, 647 (Tenn. 1996).

To the extent that Mr. Walwyn asserts that his right of access to courts has been violated, we disagree. Limiting the review in this proceeding to the singular issue of whether his punishment is appropriate and consistent with the goal of attaining uniformity of punishment throughout the State in similar circumstances does not deprive Mr. Walwyn of access to the courts.

In addition, we are not persuaded that reviewing Mr. Walwyn's sanction to ensure uniformity of discipline across the state is "arbitrary[] or conscience[-]shocking." *Collins*, 503 U.S. at 128. Therefore, we conclude that the procedure for our review of sanctions as set out in Tennessee Supreme Court Rule 9, subsections 15.4(b) and (c) does not violate Mr. Walwyn's substantive due process rights.

## B. Appropriateness of Punishment

Next, we will address whether the punishment imposed by the Panel was appropriate under the circumstances of Mr. Walwyn's case. *See* Tenn. Sup. Ct. R. 9, § 15.4(b). This Court has stated:

> In deciding an appropriate sanction when an attorney is found to have breached the rules governing his or her profession, we are required to

review all of the circumstances of the particular case and also, for the sake of uniformity, sanctions imposed in other cases presenting similar circumstances. *Bd. of Prof'l Resp[.] v. Maddux*, 148 S.W.3d 37, 40 (Tenn. 2004). We are also guided in our decision by the American Bar Association's Standards for Imposing Lawyer Sanctions, which have been adopted by the Board for disciplinary matters. *See id.*

*Bd. of Prof'l Resp. v. Allison*, 284 S.W.3d 316, 327 (Tenn. 2009) (citing *Bd. of Prof'l Resp. v. Maddux*, 148 S.W.3d 37, 40 (Tenn. 2004)); *see* Tenn. Sup. Ct. R. 9, §15.4 (a)-(b). ABA Standard 3.0 states that the four factors to consider are: "the duty violated," "the lawyer's mental state," "the potential or actual injury caused by the lawyer's misconduct," and "the existence of aggravating or mitigating factors." ABA Standard 3.0. "The ABA Standards suggest the appropriate baseline sanction, and aggravating and mitigating factors may justify an increase or reduction in the degree of punishment to be imposed." *Vogel*, 482 S.W.3d at 534 (citing *Maddux*, 148 S.W.3d at 41).

Mr. Walwyn asks this Court to approve the Panel's judgment—public censure with the conditions that he be supervised by a practice monitor for one year and that he complete six additional hours of CLE on subjects related to the management of a law practice and/or client communication. He asserts that this sanction is appropriate under the circumstances and is in compliance with the ABA standards. However, the Board argues that Mr. Walwyn's history of discipline and conduct in this case justifies "a significant suspension in excess of the previous suspension." We agree with the Board.

### 1. Circumstances of the Case

We begin the analysis by outlining the duties that Mr. Walwyn violated and the corresponding circumstances supporting the violations. The Panel concluded that Mr. Walwyn had violated Rules 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), and 8.4(a) and (d) (Misconduct) of the Tennessee Rules of Professional Conduct.

Rule 1.1 states, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Tenn. Sup. Ct. R. 8, RPC 1.1. Rule 1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client." *Id.* at RPC 1.3. The term "'[r]easonable' or 'reasonably,' when used in relation to conduct by a lawyer, denotes the conduct of a reasonably prudent and competent lawyer." *Id.* at RPC 1.0(h). The circumstances supporting this violation were Mr. Walwyn's waiting three and a half years to file a motion to accept a delayed appeal. Mr. Walwyn negligently missed the original deadline for filing the notice of appeal due to a lack of calendaring deadlines, and then he proceeded to wait until years later to file the notice of appeal even after he discovered his mistake. At the disciplinary hearing,

- 10 -

Mr. Walwyn acknowledged that "it took a long time[.] [I]t took longer than it should[.]" Mr. Walwyn was also carrying too large of a case load when he began representing Mr. Gutierrez.

Rule 1.4 states:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in RPC 1.0(e), is required by these Rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

*Id.* at RPC 1.4. The circumstances supporting this violation were Mr. Walwyn's failure to adequately communicate with Mr. Gutierrez and his failure to keep Mr. Gutierrez apprised of the status of his appeal. Mr. Gutierrez's complaint to the Board, *see supra* pp. 2-3, elucidated that he did not understand that a notice of appeal had not been filed in his case. Mr. Gutierrez also asserted that, at the time of the complaint, Mr. Walwyn was no longer in contact with him. While Mr. Walwyn stated at the hearing that he and Mr. Gutierrez "were in contact sporadically through the whole process," Mr. Walwyn explained that between filing the motion for new trial in 2011 and filing the notice of appeal in 2015, he videoconferenced with Mr. Gutierrez on two or three occasions and spoke with him on the phone "a couple of times." Mr. Walwyn asserted that he also spoke with Mr. Gutierrez's mother and that he sent one letter to Mr. Gutierrez. While it is unclear how frequently Mr. Walwyn spoke with Mr. Gutierrez's mother, based on Mr. Walwyn's testimony, Mr. Walwyn only spoke to Mr. Gutierrez approximately five or six times over the course of three and a half years.

Finally, Rule 8.4 states, in part:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct . . . ; [or]

(d) engage in conduct that is prejudicial to the administration of justice . . . .

Tenn. Sup. Ct. R. 8, RPC 8.4(a), (d). This violation was based on the above-found violations of the Rules of Professional conduct and on Mr. Walwyn's engaging in conduct that was prejudicial to the administration of justice—failing to file the motion to accept a delayed appeal for three and a half years and failing to adequately communicate with Mr. Gutierrez. As explained above, this behavior could have affected Mr. Gutierrez's right to appeal and substantially delayed the appellate process.

## 2. ABA Standards

Given the above circumstances of the case, we next examine the ABA Standards for Imposing Lawyer Sanctions to determine what the baseline sanction was for the specific circumstances in Mr. Walwyn's case. ABA Standards 2.2 through 2.7 list the most common forms of disciplinary sanctions as disbarment, suspension, interim suspension, reprimand (also known as censure or public censure), admonition (also known as a private reprimand), and probation. ABA Standards 2.2–2.7. ABA Standard 4.4 specifically addresses the appropriate sanction when there is a failure to act with reasonable diligence when representing a client. *Id.* at 4.4. Based on the circumstances of this case, we conclude that Mr. Walwyn's behavior of failing to file the delayed notice of appeal for three and a half years squarely fits within ABA Standard 4.42. It states:

4.42 Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a   client      and causes injury or potential injury to a client, or

(b) a lawyer engages in a pattern of neglect [which] causes injury or potential injury to a client.

*Id.* at 4.42 (alteration added). Mr. Walwyn testified that after he missed the initial deadline by mistake, he then waited for years to file the delayed appeal as he periodically searched for an appellate attorney to take his place on appeal. Furthermore, Mr. Gutierrez faced the potential injury of being unable to file a delayed appeal. *See infra* next paragraph. Therefore, pursuant to the ABA Standards, suspension is the appropriate sanction for this lack of diligence in pursuing a delayed appeal.

ABA Standard 4.5 addresses the appropriate sanction when there is a lack of competence exhibited when representing a client. ABA Standard 4.5. Based on the circumstances of Mr. Walwyn's situation, we conclude that ABA Standard 4.53 is the appropriate baseline sanction in this circumstance. It states:

4.53 Reprimand is generally appropriate when a lawyer:

(a) demonstrates failure to understand relevant legal doctrines or procedures and causes injury or potential injury to a client; or

(b) is negligent in determining whether he or she is competent to handle a legal matter and causes injury or potential injury to a client.

*Id.* at 4.53. It is clear that Mr. Walwyn negligently missed the original deadline for filing the notice of appeal due to a lack of calendaring deadlines and a very large caseload. Mr. Walwyn then proceeded to wait until years later to file the notice of appeal even after he discovered his mistake. At the hearing, even Mr. Walwyn acknowledged that "it took a long time[.] [I]t took longer than it should[.]" Mr. Walwyn seemed to believe that no matter how late the delayed notice of appeal was filed, it would be granted and there would be no injury to his client. However, that is not always the case. Tennessee Rule of Appellate Procedure 4(a) states, "[I]n all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document *may* be waived in the interest of justice." Tenn. R. App. P. 4(a) (2015) (emphasis added). It is at the discretion of the appellate court to determine if it will accept the delayed notice of appeal, and it is not guaranteed that they will do so. *See State v. Hunt*, No. M2012-00765-CCA-MR3-CD (Tenn. Crim. App. May 10, 2012) (Order) (denying the defendant's request for a delayed appeal, in part, because of the attorney's failure to adequately explain the year delay in filing the notice of appeal). Therefore, it is clear that Mr. Walwyn failed to fully understand the relevant legal principles in this regard and that he was negligent in properly calendaring deadlines and maintaining a manageable case load. Therefore, a reprimand is the correct baseline sanction in this regard.

Finally, ABA Standard 8.2 states, "Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession." ABA Standard 8.2. As previously noted, prior to this disciplinary hearing Mr. Walwyn had been disciplined on five separate occasions. In 2003, he received a private reprimand for failing to file a proposed order for four years. In 2004, he received a public censure for filing a proposed order late in a child support and custody case, filing a notice of appeal in a criminal case five days late, filing an appellate brief sixty days late, and failing to file a timely petition to this Court, resulting in the petition being denied as untimely. In 2006, he received a public censure for failing

- 13 -

to timely respond to Disciplinary Counsel. In 2006, Mr. Walwyn received a private informal admonition for neglecting to have a default judgment set aside and for failing to provide an affidavit to Disciplinary Counsel. Finally, in December 2015, Mr. Walwyn was suspended from the practice of law for six months, with thirty days to be served on active suspension and five months to be served on probation, for failing to file a timely notice of appeal in two separate cases, failing to timely file transcripts and appellate briefs in two separate cases, and failing to timely respond to orders of the court. *See Walwyn v. Bd. of Prof'l Resp.*, 481 S.W.3d 151, 153–160 (Tenn. 2015). Therefore, Mr. Walwyn has been disciplined multiple times for habitually missing deadlines in his clients' cases.

We note that the ABA Standards for Imposing Lawyer Sanctions do not propose a baseline sanction for failing to adequately communicate with a client.

Based on all of the above information, we conclude that suspension is the appropriate baseline sanction for Mr. Walwyn's misconduct. The ABA Standards sets forth the following definition for a suspension:

> Suspension is the removal of a lawyer from the practice of law for a specified minimum period of time. Generally, *suspension should be for a period of time equal to or greater than six months*, but in no event should the time period prior to application for reinstatement be more than three years. Procedures should be established to allow a suspended lawyer to apply for reinstatement, but a lawyer who has been suspended should not be permitted to return to practice until he has completed a reinstatement process demonstrating rehabilitation, compliance with all applicable discipline or disability orders, and fitness to practice law.

ABA Standards 2.3 (emphasis added). Furthermore, Tennessee Supreme Court Rule 9, section 12.2(a) states, "A suspension order must result in some cessation of the practice of law for not less than thirty days." Therefore, Tennessee law requires some period of active suspension rather than all of the suspension being served on probation.

### 3. Aggravating and Mitigating Circumstances

We now consider whether any of the ABA aggravating or mitigating circumstances apply to this case. *Vogel*, 482 S.W.3d at 538 (citation omitted); *see* ABA Standards 9.1-9.4. "Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed." *Id.* at 9.21. "This Court considers the aggravating and mitigating circumstances enumerated in the ABA standards to be 'illustrative rather than exclusive.'" *Vogel*, 482 S.W.3d at 538 (quoting *Lockett v. Bd. of Prof'l Resp.*, 380 S.W.3d 19, 28 (Tenn. 2012)).

After considering all of the aggravating factors in ABA Standard 9.22, we agree with the Panel and conclude that the following aggravating circumstances apply: prior disciplinary offenses, a pattern of misconduct, multiple offenses, vulnerability of victim, and substantial experience in the practice of law. After considering all of the mitigating factors in ABA Standard 9.32, we agree with the Panel and conclude that the following apply: absence of a dishonest or selfish motive, personal and emotional problems,[3] full and free disclosure to disciplinary board or cooperative attitude toward proceedings, and character or reputation. *See* ABA Standard 9.32. We also note that neither party contests the application of these aggravating and mitigating circumstances.

Although we appreciate that Mr. Walwyn exhibits no ill motive in failing to calendar deadlines and that he has now taken steps to correct this problem, we still find Mr. Walwyn's pattern of missing deadlines particularly troubling. As stated above, almost all of his prior disciplinary sanctions have been because of missed deadlines or failing to timely respond to orders of the court. While Mr. Walwyn enjoys a good reputation in the legal community, he continues to make these errors even after being disciplined multiple times for the same conduct over a span of several years and in the face of substantial experience in the practice of law.

Based on the above analysis and the application of the listed aggravating and mitigating circumstances, we conclude that the appropriate sanction in this particular circumstance is a one-year suspension from the practice of law, with six months to be served on active suspension and six months to be served on probation with a practice monitor. We also conclude that six additional hours of CLE on subjects related to the management of a law practice and/or client communication are appropriate under the circumstances.

### 4. Uniformity of Punishment

We must now consider whether this sanction is in uniformity with other sanctions that have been applied in this state. Mr. Walwyn argues that this Court has reserved "suspensions for criminal conduct, false statements and testimony, sexual misconduct with clients, and financial fraud"; therefore, suspension is inappropriate in his case. The Board disagrees and indicates that Mr. Walwyn's case is unique from most other cases

---

[3] We note that Mr. Walwyn did not testify about any personal or emotional problems at the Panel hearing. However, Mr. Walwyn offered the judgment of a hearing panel in a prior disciplinary action as an exhibit in the current proceedings. In the prior hearing, the hearing panel concluded that Mr. Walwyn's father passed away in 2012 and that Mr. Walwyn was very close to his father. Because Mr. Walwyn's father passed away during his representation of Mr. Gutierrez, we conclude, as did the Panel in this case, that this mitigating circumstance also applies in Mr. Walwyn's current case.

because he has been "disciplined for the same misconduct so many times." We agree with the Board.

During the exchange of interrogatories, the Board provided Mr. Walwyn with six comparable cases in which an attorney had been disciplined. They are set out in the Protocol Memorandum as follows:

1) Paul J. Walwyn (Davidson County) — December 3, 2015 — Suspended for six months, with 30 days active suspension and the remainder on probation. In three separate criminal appeals, Mr. Walwyn failed to timely file transcripts and briefs. In two of those cases, Mr. Walwyn failed to timely file the notice of appeal. Also, Mr. Walwyn failed to adequately communicate with his clients.

2) Paul J. Walwyn (Davidson County) — July 22, 2004 — Public Censure. In a child support and custody case, Mr. Walwyn neglected the matter and failed to timely submit an order. In a criminal case, Mr. Walwyn filed a notice of appeal late, filed his brief late and failed to file an application for permission to appeal to the Supreme Court.

3) John E. Herbison (Montgomery County) — November 20, 2014 — Suspended for 18 months, with 60 days active suspension and the remainder on probation. In two cases, Mr. Herbison failed to adequately communicate with his clients. In a third case, he failed to file a notice of appeal in a criminal case and filed an untimely request for a late appeal.

4) Christopher P. Westmoreland (Bedford County) — October 15, 2015 — Public Censure. In one criminal appeal, Mr. Westmoreland failed to timely file a brief. In another criminal appeal, he failed to file a timely notice of appeal.

5) C. LeAnn Smith (Davidson County) — December 27, 2005 — Public Censure. Ms. Smith failed to timely file a notice of appeal in a criminal case. An order was then entered allowing her ten days to file the notice of appeal but she failed to do so.

6) Angela J. Hopkins (Madison County) — October 19, 2009 — Public Censure. Ms. Hopkins failed to file a notice of appeal in a criminal case and failed to seek permission to file a late appeal.

Interestingly, two of Mr. Walwyn's prior disciplinary cases are listed as comparable to the present case. Aside from these six examples, Mr. Walwyn indicates

that three additional cases are also instructive. *See In re: John Martin Drake*, *B.P.R. # 30532*, B.O.P.R. No. 40868-5-PS (Tenn. B.P.R. Oct. 14, 2015) (publicly censuring an attorney for failing to file an appellate brief on his client's behalf and for failing to respond to the Court of Criminal Appeals' inquiries regarding the appeal); *In re: Adam Wilding Parrish, B.P.R. # 21917*, No. M2014-01446-SC-BAR-BP (Tenn. July 30, 2014) (Order of Enforcement) (suspending an attorney for one year, to be served on probation,[4] for failing to file documents to perfect and appeal, failing to file a divorce complaint, and misleading a client about the status of her case); *In re: Samuel Rodriguez, III, B.P.R. # 27880*, No. M2013-02794-SC-BAR-BP (Tenn. Dec. 23, 2013) (Order of Enforcement) (publicly censuring an attorney, in three separate cases, for failing to file a notice of appeal, failing to pursue an appeal for an extended period of time, failing to file a timely appellate brief, and failing to adequately communicate with his clients.)

Of these examples, we find Mr. Walwyn's 2015 six-month suspension, Mr. Herbison's eighteen-month suspension, *see In re: John Edward Herbison, B.P.R. # 12659*, No. M2014-02193-SC-BAR-BP (Tenn. Nov. 20, 2014) (Order of Enforcement), and Mr. Parrish's one-year suspension the most instructive because they all include the failure to file timely court documents and the failure to properly communicate with a client. Therefore, it is clear from these cases that suspension for a period of six to eighteen months is in uniformity with past cases. Thus, the above-proposed sanction of a one-year suspension is appropriate in this case and uniform with past disciplinary actions.

However, even these cases are not fully analogous with Mr. Walwyn's current case because of Mr. Walwyn's past disciplinary history for substantially the same conduct. It is because of this past disciplinary history that we conclude that six months of Mr. Walwyn's suspension shall be served on active suspension while the remaining six months will be served on probation with a practice monitor. We also impose six additional hours of CLE on subjects related to the management of a law practice and/or client communication.

### CONCLUSION

Based on our careful consideration of the entire record "with a view to attaining uniformity of punishment throughout the State and appropriateness of punishment under the circumstances of each particular case," Tenn. Sup. Ct. R. 9, § 15.4 (b), we modify the judgment of the Hearing Panel to impose a one-year suspension from the practice of law,

---

[4] We note that Mr. Parrish's one-year suspension was fully probated because his case arose before the effective date of Tennessee Supreme Court Rule 9, section 12.2(a), which states that "[a] suspension order must result in some cessation of the practice of law for not less than thirty days." Tenn. Sup. Ct. R. 9, § 12.2(a).

with six months of the suspension to be served on active suspension and six months to be served on probation with a practice monitor. The duties and obligations in relation to the practice monitor shall be enforced in accordance with Panel's Amended Judgment. We also impose six additional hours of CLE on subjects related to the management of a law practice and/or client communication. The costs of this cause shall be paid by Paul Julius Walwyn, for which execution may issue if necessary.

_____
ROGER A. PAGE, JUSTICE