FILED
11/22/2022
Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 28, 2022

**IN RE: JOSEPH H. CRABTREE, JR., BPR #011451**

---

**No. M2022-00339-SC-BAR-BP**

---

This is an attorney discipline proceeding concerning Tennessee attorney Joseph H. Crabtree, Jr. and his representation of several clients with varying legal issues. The Board of Professional Responsibility ("the Board") filed formal petitions for discipline against Mr. Crabtree in February 2019. A Hearing Panel of the Board ("Hearing Panel") adjudicated the petitions and rendered a judgment suspending Mr. Crabtree for two years and ordering him to serve six months as active suspension and the remainder on probation. It also directed Mr. Crabtree to pay restitution to two clients, to reimburse one client for any costs assessed against her upon the dismissal of her case, and to reimburse the Tennessee Lawyers Fund for Client Protection ("TLFCP") for any money it pays to the complainants in this matter. Mr. Crabtree failed to perfect an appeal from the Hearing Panel's decision, and the Board petitioned this Court for an order enforcing the Hearing Panel's judgment. Pursuant to Tennessee Supreme Court Rule 9, sections 15.4(d) and (e), we determined that the punishment imposed by the Hearing Panel appeared inadequate. Thus, we proposed to increase it. Based on our careful consideration of the entire record, "with a view to attaining uniformity of punishment throughout the State and appropriateness of punishment under the circumstances of each particular case," we modify the judgment of the Hearing Panel to impose a three-year suspension, with one year served as active suspension and the remainder on probation. Tenn. Sup. Ct. R. 9, § 15.4(b), (d). During the first year of the probationary period, Mr. Crabtree shall engage a practice monitor at his own expense to supervise his compliance with trust account rules and office management procedures in accordance with Tennessee Supreme Court Rule 9, section 12.9. Finally, as a condition of reinstatement, Mr. Crabtree shall complete twelve hours of continuing legal education ("CLE"), with six hours focused on ethics and six hours on law office management, in addition to the annual fifteen-hour CLE requirement. In all other respects, including payment of restitution to his clients and reimbursement to TLFCP, the decision of the Hearing Panel is affirmed.

**Tenn. Sup. Ct. R. 9, § 15.4; Judgment of the Hearing Panel Modified in Part; Affirmed in Part.**

ROGER A. PAGE, C.J., delivered the opinion of the court, in which SHARON G. LEE, JEFFREY S. BIVINS, HOLLY KIRBY and SARAH K. CAMPBELL, JJ., joined.

James W. Milam, Brentwood, Tennessee, for the Petitioner, Board of Professional Responsibility.

Joseph H. Crabtree, Jr., Athens, Tennessee, Respondent, pro se.

## OPINION

### I. FACTUAL & PROCEDURAL HISTORY

This matter involves an attorney disciplinary proceeding governed by Tennessee Supreme Court Rule 9. In 2019 and 2020, the Board of Professional Responsibility filed three petitions for discipline (initial, supplemental, and second supplemental) against attorney Joseph H. Crabtree, Jr. of Athens, Tennessee. Mr. Crabtree has been licensed to practice law in Tennessee since 1985. The petitions alleged violations of the Tennessee Rules of Professional Conduct ("RPC") based on four complaints from Mr. Crabtree's former clients: Jerry Wilson, Cynthia and Stephen Kyker, Crystal Velez, and Vickie Haberbosch. The Wilson, Kyker, and Velez complaints were included in the initial and supplemental petitions for discipline. After Mr. Crabtree failed to file answers to the petitions, the court entered default judgments against him and deemed admitted the allegations of the initial and supplemental petitions. Mr. Crabtree filed an answer to the second supplemental petition, which contained the Haberbosch complaint. As a result, a disciplinary hearing was convened both to adjudicate Ms. Haberbosch's complaint and to determine an appropriate sanction for the allegations of the initial and supplemental petitions, which included the Wilson, Kyker, and Velez complaints.

The disciplinary hearing convened via Zoom on January 13, 2021. Three witnesses testified: Ms. Haberbosch, Mrs. Kyker, and Mr. Crabtree. The following is a summary of the facts deemed admitted by the default judgments against Mr. Crabtree and the proof presented at the disciplinary hearing.

- 2 -

*Wilson Complaint*

In January 2017, Mr. Wilson retained Mr. Crabtree to provide legal advice about a workers' compensation settlement that Mr. Wilson agreed upon with his employer's counsel. Mr. Wilson asked Mr. Crabtree to review the agreement because his employer's counsel deducted social security from the agreed upon settlement amount. Mr. Crabtree advised Mr. Wilson that the social security offsets were inappropriate and claimed that he could help Mr. Wilson obtain a greater settlement. Because of that assurance, Mr. Wilson agreed to retain Mr. Crabtree to represent him. However, when Mr. Crabtree corresponded with the employer's counsel, he learned that his advice to Mr. Wilson was erroneous because legal precedent authorized social security offsets against the proposed settlement amount. Mr. Crabtree failed to inform Mr. Wilson that his advice was erroneous and also failed to finalize the settlement agreement with employer's counsel. Mr. Wilson attempted to contact Mr. Crabtree several times regarding the status of the claim. Mr. Crabtree failed to timely respond or otherwise communicate with Mr. Wilson, ultimately allowing the statute of limitations to expire on the claim. He excused his behavior by stating that a new workers' compensation law came into effect while the case was pending, causing him to miss some deadlines.

In July 2018, Mr. Wilson sued Mr. Crabtree for legal malpractice. Mr. Crabtree negotiated a settlement of the malpractice claim with Mr. Wilson. Mr. Crabtree did this without advising Mr. Wilson to seek advice from independent legal counsel before settling the malpractice claim. In September 2018, Mr. Crabtree presented Mr. Wilson with two forms: "Release of All Claims and Indemnity Agreement" and "Agreed Order of Dismissal with Prejudice." Once again, he failed to advise Mr. Wilson in writing to seek the advice of independent legal counsel before executing the settlement documents. Mr. Wilson executed the documents and in exchange received $8,638.27 as a settlement from Mr. Crabtree. At the disciplinary hearing, Mr. Crabtree stated that Mr. Wilson was "made whole" by the settlement.

*Kyker Complaint*

In November 2012, Mrs. Kyker and her husband retained Mr. Crabtree to represent them in a lawsuit seeking damages for personal injuries and loss of consortium. The claim involved Mrs. Kyker's injuries allegedly sustained in a laser hair removal procedure. In January 2013, Mr. Crabtree sent pre-suit notice to one of the defendants, the clinic's licensed physician assistant ("PA"), but the notice only mentioned Mrs. Kyker as a plaintiff

and failed to list Mr. Kyker. In March 2013, Mr. Crabtree filed suit on behalf of both Mr. and Mrs. Kyker against the PA and the other defendants who were involved with the procedure and the clinic.

The case remained pending for several years. During that time, Mr. Crabtree filed several pleadings for the Kykers. In July 2017, Mr. Crabtree filed a response to a motion for summary judgment and a motion for a trial date and a scheduling order. In July 2018, Mr. Crabtree filed an agreed scheduling order for the disclosure of all expert witnesses. In August 2018, after consulting Mrs. Kyker and obtaining her approval, Mr. Crabtree filed a response declining a settlement offer.

Though Mr. Crabtree sporadically worked on the case, Mrs. Kyker described having difficulty communicating and meeting with him. She testified that, on more than one occasion, several months passed with no communication from him at all. On February 12, 2019, seven years after initiating the lawsuit, Mrs. Kyker sent Mr. Crabtree a certified letter in an attempt to establish communication. Days later, Mrs. Kyker visited the trial court clerk's office to inquire about the status of the case and get copies of her records. During this visit, she learned several updates about her case for the first time. In March 2014, the trial court dismissed Mr. Kyker's loss of consortium claim for failure to comply with statutory pre-suit notice requirements, and granted the PA's motion for discretionary costs. This dismissal was due to Mr. Crabtree's failure to add Mr. Kyker as a plaintiff on the pre-suit notice sent to the PA in 2013. Tenn. Code Ann. § 29-26-121(a)(1) (2012). In December 2018, the trial court entered an order granting the defendants' joint motion to dismiss Mrs. Kyker's case without prejudice because Mr. Crabtree failed to file any opposition to the motion to dismiss, failed to comply with two court orders, and failed to prosecute the case. In the spring of 2019, the trial court entered two orders granting a motion to assess the discretionary costs of one of the defendants against both plaintiffs: $2,629.42 against Mrs. Kyker and $2,260.42 against Mr. Kyker. Mr. Crabtree failed to file a response to either motion and did not notify his clients of the debts against them. Finally, Mrs. Kyker testified that a treating physician paid her $3,730.00 to release him from the case. After Mr. Crabtree received the money, he placed it into a trust account, but he never disbursed the funds to Mrs. Kyker.

In Mr. Crabtree's testimony, he acknowledged that Mr. and Mrs. Kyker likely had difficulty reaching him. He described having difficulty scheduling depositions because the case involved so many parties and lawyers and the parties were hard to reach. However, in his testimony, Mr. Crabtree stated: "I, frankly, dropped the ball. I'm not going to try to

- 4 -

say that anything was justified or excusable at that time." He explained that he attempted to mediate the case and alleged that he even expended over $6,000 of his own funds on depositions. He admitted to receiving the funds from the physician and to owing Mrs. Kyker $1,230.00, representing the balance remaining of the settlement subtracted by payments Mr. Crabtree made for certain litigation expenses.

*Velez Complaint*

Ms. Crystal Velez allegedly fractured her toe when she fell at a Walmart store in June 2017. A few days later, she retained Mr. Crabtree to represent her in a personal injury lawsuit against the company. However, Mr. Crabtree allowed the statute of limitations to expire on her claim without taking any action. Ms. Velez filed a complaint with the Board. In an email response to a Board inquiry, Mr. Crabtree stated that he "issued a letter to Walmart to preserve evidence." When the Board asked him to provide a copy of the letter, Mr. Crabtree did not provide the letter or further respond to Board inquiries. He also failed to file a formal response to the supplemental petition for discipline.

At the disciplinary hearing, Mr. Crabtree admitted that he failed to calendar the case and failed to advise Ms. Velez about the expiration of the statute of limitations. Mr. Crabtree described Ms. Velez's claim as weak, but he expressed "regret" for failing to follow up with her about not wanting to pursue the case. More specifically, he said he "did not wish to pursue the case . . . because . . . [it was] not going to be a very fruitful case really for anyone, including her."

*Haberbosch Complaint*

Ms. Haberbosch retained Mr. Crabtree in March 2019 to provide legal services related to her business, Family Home Care Services, LLC. In particular, she asked Mr. Crabtree to prepare and send several cease-and-desist letters, to prepare a separation agreement for a co-owner of her business, and to prepare a new operating agreement. Ms. Haberbosch signed a retainer agreement and paid Mr. Crabtree a $2,500.00 retainer. Despite back-and-forth emails and Ms. Haberbosch's repeated requests, Mr. Crabtree never sent the cease-and-desist letters. He also never prepared the revised operating agreement. Though he did prepare the separation agreement, which the required party signed in mid-April, the letter was not dated, making it incomplete. After mid-April and multiple emails back and forth, Ms. Haberbosch was unable to reach Mr. Crabtree for over a month.

Frustrated with the situation, Ms. Haberbosch emailed Mr. Crabtree asking for a refund and stating that she was going to get another attorney. Since she could not reach Mr. Crabtree, Ms. Haberbosch took her legal matters into her own hands. Ms. Haberbosch negotiated an agreement on her own with one of the people who was supposed to receive a cease-and-desist letter. She made her own revisions to the operating agreement for the LLC and paid a different attorney to review it. Ms. Haberbosch then filed a complaint with the Board, after which Mr. Crabtree offered to refund half of her retainer in the amount of $1,250.00. However, Mr. Crabtree never paid the refund.

In his testimony, Mr. Crabtree admitted to neglecting Ms. Haberbosch's requests, as described above. He further admitted that he was difficult to reach during the time he agreed to represent Ms. Haberbosch, but he stressed that he told her when she hired him that he would be very busy in the coming days with a trial. He denied being as difficult to reach as Ms. Haberbosch testified. He believed revising the operating agreement was unnecessary. He also acknowledged agreeing to pay the refund, but the refund was not paid by the time of the disciplinary hearing at issue on appeal here.

*Hearing Panel's Judgment*

The Hearing Panel issued its judgment on February 10, 2021, finding that Mr. Crabtree violated the following Tennessee Rules of Professional Conduct from Supreme Court Rule 8:

RPC 1.1 (Competence), which provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation[;]"

RPC 1.3 (Diligence), which provides: "A lawyer shall act with reasonable diligence and promptness in representing a client[;]"

RPC 1.4 (Communication), which provides:

(a) A lawyer shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent . . . is required by these Rules;
(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter;
(4) promptly comply with reasonable requests for information; and
(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the [RPC] or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation[;]

RPC 1.8(h) (Conflict of Interest:  Current Clients; Specific Rules), which provides:

(h) A lawyer shall not:
(1) make an agreement prospectively limiting the lawyer's liability to a client or prospective client for malpractice; or
(2) settle a claim or potential claim for such liability with an unrepresented client or former client unless the lawyer fully discloses all the terms of the agreement to the client in a manner that can reasonably be understood by the client and advises the client in writing of the desirability of seeking [independent legal counsel] and gives the client a reasonable opportunity to seek the advice of independent legal counsel in connection therewith[;]

RPC 3.2 (Expediting Litigation), which provides: "A lawyer shall make reasonable efforts to expedite litigation;"

RPC 3.4(c) (Fairness to Opposing Party and Counsel), which provides: "A lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists;"

RPC 8.1(b) (Bar Admission and Disciplinary Matters), which provides:

> [A] lawyer . . . in connection with a disciplinary matter, shall not:
>
> . . .
>
> (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, . . . [unless] otherwise protected by RPC 1.6;

RPC 8.4(a), (c), and (d) (Misconduct), which provide:

> It is professional misconduct for a lawyer to:
>
> (a) violate or attempt to violate the [RPC], knowingly assist or induce another to do so, or do so through the acts of another;
>
> . . .
>
> (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;
> (d) engage in conduct that is prejudicial to the administration of justice.

The Hearing Panel then considered the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards"),[1] identifying Standards 4.42,[2] 7.2,[3] and 8.2[4] as the applicable standards. These standards establish a presumptive, baseline sanction of suspension for Mr. Crabtree's ethical violations. ABA Standard 9 allows for the Hearing Panel to use aggravating and mitigating factors to help decide on punishment. Based on that provision, the Hearing Panel identified four aggravating circumstances: (1) multiple offenses; (2) prior disciplinary history; (3) substantial experience in the practice of law (thirty-five years); and (4) Mr. Crabtree's "refusal to acknowledge the wrongful nature of much of his conduct." *See* ABA Standard § 9.22. Mr. Crabtree's prior disciplinary history consists of three private informal admonitions in 2010, 2012, and 2016, and a 2011 public censure. The instances leading to discipline consisted of failing to file orders, failing to keep clients apprised of dates, failing to communicate, and neglecting representation. The Hearing Panel determined that there were no mitigating circumstances in Mr. Crabtree's case. The Hearing Panel imposed a two-year suspension, with six months served as active suspension and the remainder on probation. As conditions precedent to reinstatement, the Hearing Panel ordered Mr. Crabtree to pay restitution of $1,250.00 to Ms. Haberbosch and $1,230.00 to Mrs. Kyker. It also ordered Mr. Crabtree to reimburse Mrs. Kyker for any costs, fines or penalties against her resulting from his mishandling of her claim. It directed Mr. Crabtree to reimburse the TLFCP for any money it pays to the complainants in this case.

---

[1] Standards for Imposing Lawyer Sanctions (Am. Bar. Ass'n 1986) [hereinafter ABA Standard].

[2] ABA Standard 4.42 provides: "Suspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injuries to a client."

[3] ABA Standard 7.2 provides: "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system."

[4] ABA Standard 8.2 provides: "Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession."

Mr. Crabtree filed a Petition for Review in the McMinn County Chancery Court pursuant to Tennessee Supreme Court Rule 9, section 33.1(a), on May 17, 2021.[5] Later, the trial court ordered Mr. Crabtree to submit a record of the evidence by June 9 and file his pre-trial brief by August 31. Mr. Crabtree failed to file either the transcript or his brief. Thus, the Board moved to dismiss his Petition for Review, to which Mr. Crabtree also failed to respond. The trial court granted the motion and dismissed the appeal.

Mr. Crabtree filed a notice of appeal to this Court pursuant to Tennessee Supreme Court Rule 9, section 33.1(d), which provides that

> Either party dissatisfied with the decree of the circuit or chancery court may prosecute an appeal directly to the Court where the cause shall be heard upon the transcript of the record from the circuit or chancery court, which shall include the transcript of the evidence before the hearing panel.[6]

The Board moved to dismiss Mr. Crabtree's appeal to this Court, noting that he failed to file the transcript and therefore did not provide a record for this Court to review. *See* Tenn. Sup. Ct. R. 9, § 33.1(d). The Chancery Court for McMinn County filed a statement in this Court advising that Mr. Crabtree failed to comply with the Tennessee Rules of Appellate Procedure because he failed to file a transcript or statement of the evidence. *Id.* § 33.1(b). Mr. Crabtree did not respond to either the Board's motion to dismiss or the statement of the Chancery Court. On February 23, 2022, this Court granted the Board's motion and dismissed Mr. Crabtree's appeal.

---

[5] Rule 9, section 33.1(a) provides, in pertinent part:

The respondent or petitioning attorney or the Board may appeal the judgment of a hearing panel by filing within sixty days of the date of entry of the hearing panel's judgment a Petition for Review in the circuit or chancery court of the county in which the office of the respondent or petitioning attorney was located at the time the charges were filed with the Board.

[6] This section was amended in March 2022, but the changes do not affect the portions the Board relied on in support of its motion to dismiss.

After the dismissal of the appeal, the Board filed a notice of submission pursuant to Tennessee Supreme Court Rule 9, section 15.4(d),[7] along with a proposed order of enforcement incorporating the Hearing Panel's decision. This Court reviewed the materials and the punishment recommended to it "with a view to attaining uniformity of punishment throughout the State and appropriateness of punishment under the circumstances of each particular case." Tenn. Sup. Ct. R. 9, § 15.4(d). Pursuant to Tennessee Supreme Court Rule 9, section 15.4(d) and (e), this Court entered an order proposing to increase the punishment. We directed the Board to file the record of the disciplinary hearing, including the transcript of the proceeding, by no later than April 27, 2022. We also set a briefing schedule and stated that this matter would be submitted for decision on the record and the briefs, without oral argument.

The Board timely filed the record of the disciplinary proceeding. Mr. Crabtree then requested and was granted an extension to file his brief. However, he failed to file a brief or seek a further extension. This Court entered an order declaring that Mr. Crabtree forfeited his right to file a brief, directed the Board to file its brief by June 27, 2022, and reiterated that the Court would decide this case upon the record and the Board's brief, without oral argument. The Board timely filed its brief, and the case is now before this Court for decision.

## II. STANDARD OF REVIEW

This Court is the "final and ultimate arbiter of the propriety of the professional conduct of all lawyers practicing in Tennessee." *Flowers v. Bd. of Prof'l Resp.*, 314 S.W.3d 882, 891 (Tenn. 2010) (citing *Sneed v. Bd. of Prof'l Resp.*, 301 S.W.3d 603, 612 (Tenn. 2010)). As a result, this Court promulgates and enforces the rules that govern the legal profession in this State. *Bd. of Prof'l Resp. v. MacDonald*, 595 S.W.3d 170, 181 (Tenn.

---

[7] In pertinent part, Rule 9, section 15.4(d) provides:

If the judgment of a hearing panel is appealed to the circuit or chancery court pursuant to Section 33 and the trial court enters a judgment disbarring or suspending the respondent attorney for any period of time or imposing a public censure, and *no appeal is perfected within the time allowed,* the Board shall file in the Nashville office of the Clerk of the Supreme Court a Notice of Submission with an attached copy of its judgment.

2020) (citing *Walwyn v. Bd. of Prof'l Resp.*, 481 S.W.3d 151, 162 (Tenn. 2015) and *Bd. of Prof'l Resp. v. Cowan*, 388 S.W.3d 264, 267 (Tenn. 2012)).

Tennessee Supreme Court Rule 8 contains the Rules of Professional Conduct, and Rule 9 establishes the framework for disciplinary enforcement. Rule 9, section 15 prescribes the process for attorney disciplinary matters. Complaints against attorneys are investigated by disciplinary counsel for the Board. Tenn. Sup. Ct. R. 9, § 15.1(b). At the conclusion of the investigation, disciplinary counsel may recommend dismissal, private informal admonition, private reprimand, public censure, or prosecution of formal charges. *Id.* When a complaint proceeds to prosecution by formal charges, and in the absence of an agreement between the Board and the attorney, the matter is typically decided by a hearing panel. *See* Tenn. Sup. Ct. R. 9, § 15.2(a), (d). At the hearing, "[d]isciplinary [c]ounsel must prove the case by a preponderance of the evidence." *Id.* § 15.2(h). The hearing panel must submit "its findings and judgment, in the form of a final decree of a trial court, to the Board within thirty days after the conclusion of the hearing." *Id.* § 15.3(a). If a hearing panel enters a judgment recommending discipline, the attorney can either appeal the decision or accept the judgment. *See id.* § 33. If the punishment is disbarment, suspension, or public censure, and no appeal is perfected from the hearing panel's decision, the Board files with this Court a notice of submission, the judgment, a proposed order of enforcement, and a protocol memorandum. *Id.* § 15.4(b); *In re Walwyn*, 531 S.W.3d 131, 137 (Tenn. 2017).

We review hearing panel judgments even if neither party appeals pursuant to our "inherent authority" under the Tennessee Constitution to supervise and regulate the practice of law in Tennessee. *In re Sitton*, 618 S.W.3d 288, 294 (Tenn. 2021); *see also In re Cope*, 549 S.W.3d 71, 73 (Tenn. 2018); *In re Vogel*, 482 S.W.3d 520, 530 (Tenn. 2016). Our review in such instances focuses on "attaining uniformity of punishment throughout the State and appropriateness of punishment under the circumstances of each particular case." Tenn. Sup. Ct. R. 9, § 15.4(d); *see also id.* § 15.4(b). If the punishment appears "inadequate or excessive," this Court "issue[s] an order advising the Board and the respondent attorney that it proposes to increase or to decrease the punishment." *Id.* § 15.4(c). When this Court proposes to increase the punishment, as is the case here, the Court directs the Board to file the record of the disciplinary hearing and allows the attorney and the Board to file briefs after the record is filed. *Id.*

"[O]ur standard of review as to the recommended punishment is de novo." *In re Walwyn*, 531 S.W.3d 131, 137 (Tenn. 2017) (citing Tenn. Sup. Ct. R. 9, § 15.4(b)-(c) and

*Hughes v. Bd. of Prof'l Resp.*, 259 S.W.3d 631, 640 (Tenn. 2008)). This Court is "required to review all of the circumstances of the particular case and also, for the sake of uniformity, sanctions imposed in other cases presenting similar circumstances." *In re Cope*, 549 S.W.3d 71, 74 (Tenn. 2018) (quoting *Bd. of Prof'l Resp. v. Allison*, 284 S.W.3d 316, 327 (Tenn. 2009)). After considering the record and the briefs, this Court "may modify the judgment of the hearing panel . . . in such manner as it deems appropriate. There shall be no petition for rehearing." Tenn. Sup. Ct. R. 9, § 15.4(c).

### III. ANALYSIS

Mr. Crabtree forfeited his opportunity to file a brief in this Court. The Board acknowledges in its Brief that the Hearing Panel correctly identified suspension as the appropriate presumptive sanction under the ABA Standards for Mr. Crabtree's ethical violations. The Board nevertheless asserts that a longer period of suspension would be more appropriate given the degree of misconduct, the aggravating circumstances, and the lack of mitigating circumstances. Instead of the two-year suspension the Hearing Panel imposed, the Board asks this Court to order a four-year suspension with a minimum of one year served on active suspension and the remaining three years served on probation. Along with that, the Board suggests requiring Mr. Crabtree to engage a practice monitor during at least two years of the probationary period and complete twelve additional CLE hours (six focused on ethics, six focused on law office management). The Board also asks this Court to require Mr. Crabtree to pay Cynthia and Stephen Kyker for any amounts they owe for discretionary costs assessed against them, pay restitution of $1,230.00 to Cynthia Kyker, pay restitution of $1,250.00 to Vickie Haberbosch, reimburse the TLFCP for any money it pays to the complainants in this case, and pay the costs of this appeal.

We agree with the Board that the Hearing Panel properly considered the ABA Standards and correctly identified suspension as the proper sanction. Tenn. Sup. Ct. R. 9, § 15.4(a); *In re Vogel*, 482 S.W.3d 520, 533 (Tenn. 2016). The Hearing Panel next considered aggravating and mitigating factors to determine whether the presumptive sanction should be increased or decreased. *In re Vogel*, 482 S.W.3d at 533-34 (citing *Bd. Of Prof'l Resp. v. Maddux*, 148 S.W.3d 37, 41 (Tenn. 2004)). We also agree that the Hearing Panel correctly identified the four aggravating circumstances and correctly determined that there were no mitigating circumstances.

Our only disagreement with the Hearing Panel's decision is the length of the suspension and the period of active suspension. As the Hearing Panel determined, this

- 13 -

matter involves multiple offenses. As explained below, we conclude that the circumstances of this case and the goal of attaining uniformity of punishment warrant a more significant suspension than that imposed by the Hearing Panel.

We begin our review with an overview of the circumstances of this case. As the Hearing Panel determined, this matter involves multiple offenses. Mr. Crabtree has accumulated four disciplinary complaints since 2018. These complaints involved Mr. Crabtree disregarding multiple ethical obligations in his representation of several clients over a period of six years. As the Hearing Panel determined, he has refused to acknowledge the wrongful nature of much of his misconduct. Indeed, in several instances, he attempted to justify or mitigate his misconduct.

For instance, Mr. Crabtree characterized his inappropriate settlement of Mr. Wilson's legal malpractice claim against him as making his client "whole." In response to Mr. and Mrs. Kyker's and Ms. Haberbosch's complaints that he failed to communicate, Mr. Crabtree testified that the clients also were difficult to reach and that he warned them he would be busy. In response to allowing the statute of limitations to run on Ms. Velez's personal injury claim, even though he was hired shortly after the injury allegedly occurred, Mr. Crabtree described her claim as weak. Concerning that same claim, Mr. Crabtree failed to produce a copy of an evidence-preservation letter he claimed to have sent to the defendant. While he acknowledged failing to perform two of the three specific tasks for which Ms. Haberbosch hired him, Mr. Crabtree characterized one of the tasks he failed to perform as unnecessary.

Mr. Crabtree also exhibited a pattern of disregarding or neglecting court orders in this proceeding and in the representation of his clients. For example, Mrs. Kyker's claim was dismissed in part because Mr. Crabtree failed to comply with two court orders. Additionally, beginning in the trial court and continuing in this Court, Mr. Crabtree failed to comply with filing and briefing deadlines, resulting in both the trial court and this Court dismissing his appeals. Even after this Court entered an order notifying him that it proposed to increase his sanction and after he requested and received an extension of the briefing deadline in this Court, Mr. Crabtree simply failed to file a brief or a motion requesting an additional extension of time. He chose to do nothing at all, consistent with the pattern of misconduct he exhibited in representing his former clients.

Mr. Crabtree's apathetic and unconcerned attitude toward his professional ethical obligations and this serious proceeding is inexplicable. As the Hearing Panel determined,

- 14 -

Mr. Crabtree has substantial experience in the practice of law in Tennessee, having been licensed since 1985. He also has a prior disciplinary history, having received three private informal admonitions and a public censure. These less serious sanctions have seemingly failed to convey to Mr. Crabtree the importance of complying with professional ethical obligations. That certainly militates against a lenient sanction.

As the Board argues, Mr. Crabtree's multiple offenses, the circumstances of the offenses, his refusal to acknowledge the wrongful nature of much of his conduct, his prior disciplinary history, and his overall lack of diligence throughout this appeal compel us to conclude that a more significant period of suspension than that imposed by the Hearing Panel is warranted to impress upon Mr. Crabtree the serious nature of his ethical misconduct and to allow him an opportunity to correct course.

Our consideration of similar cases also convinces us that a more significant period of suspension than that imposed by the Hearing Panel is warranted. No two cases are factually identical, but there are similar cases involving attorneys with substantial experience in the practice of law and prior disciplinary history. The attorneys in these cases violated multiple ethical obligations to clients, and some involved multiple aggravating circumstances.

In *Beard v. Board of Professional Responsibility*, 288 S.W.3d 838, 841 (Tenn. 2009), three petitions for discipline involving multiple client complaints were filed against the attorney. A hearing panel found the attorney violated twenty-six ethical rules. *Id.* at 859. It also found four aggravating circumstances, including the attorney's substantial experience in the practice of law, his disciplinary history consisting of six prior sanctions, his pattern of misconduct, and "his bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency." *Id.* at 858-59. The hearing panel found no mitigating factors. *Id.* at 859. The panel imposed a two-year active suspension as to each complaint, with the suspensions served concurrently. *Id.* at 852, 859.

In another case, *In Re Matthew David Dunn*, the client complained about the attorney's inaction. *In Re Matthew David Dunn*, M2019-01751-SC-BAR-BP, BOPR No. 2018-2825-6-AW (Tenn. Oct. 8, 2019); *Dunn* Protocol Memorandum, 1. The petition for discipline alleged that Mr. Dunn knowingly and intentionally failed to diligently respond to discovery requests; failed to respond to motions filed by opposing counsel; failed to comply with discovery obligations set forth in the Rules of Civil Procedure; failed to appear

for scheduled court hearings; and failed to take any action to set aside the dismissal of his client's case. *Dunn* Protocol Memorandum, 1. The attorney's lack of diligence resulted in the dismissal of his client's case with prejudice, but Mr. Dunn did not promptly inform his client of the dismissal of her action. *Id.* Instead, the attorney took advantage of his personal relationship with his client and his knowledge of her circumstances. *Id.* He pressured her to settle her legal malpractice claim and withdraw her disciplinary complaint. *Id.* Mr. Dunn also led the Board to believe his client accepted his offer to compensate her for the loss of her action. *Id.*

A hearing panel found Mr. Dunn violated RPC 1.3 (Diligence), RPC 1.4 (Communication), RPC 1.8(h)(2) (Conflict of Interest), RPC 3.2 (Expediting Litigation), RPC 3.4(c) and (d) (Fairness to Opposing Party/Counsel), RPC 8.1(a) (Disciplinary Matters), and RPC 8.4(a), (c), and (d) (Misconduct). *Id.* Mr. Dunn's violations are nearly identical to those of Mr. Crabtree. The hearing panel found six aggravating circumstances: Mr. Dunn's multiple offenses, his refusal to acknowledge the wrongful nature of his conduct, his dishonest or selfish motive in attempting to convince his client to drop her disciplinary complaint, his false statements to the Board, the vulnerability of his client, and his substantial experience in the practice of law. *Id.* at 3-6. Unlike Mr. Crabtree's case, the hearing panel found a mitigating circumstance: Mr. Dunn had no prior disciplinary history. *Id.* at 4.

Ultimately, the hearing panel imposed a five-year suspension, with three years served as active suspension and two years on probation. *Id.* at 132. He was also ordered to engage a practice monitor, complete additional CLE hours, and contact the Tennessee Lawyer Assistance Program. *Id.* Though he received a strict suspension, it did not impress upon him the importance of his ethical obligations. Unfortunately, he did not correct course and has since been permanently disbarred for subsequent ethical violations.[8]

The analysis of *Beard* and *Dunn* illustrates that attorneys typically receive a significant period of suspension when the following circumstances are present: violation of multiple ethical rules in the representation of clients, the existence of multiple aggravating circumstances, and the lack of mitigating circumstances. That is precisely the situation here.

---

[8] *In re Matthew David Dunn*, BPR #030759, No. M2021-00094-SC-BAR-BP, BOPR No. 2020-3066-6-TL, Order (Tenn. Jan. 29, 2021).

Mr. Crabtree's actions show a pattern of disregard and neglect of court orders, both in the representation of his clients and in the representation of himself in this proceeding. As for his clients, his neglect led to the dismissal of their cases and the expiration of statutes of limitations on their claims, leaving them without legal recourse. With regard to this proceeding, Mr. Crabtree failed to meet deadlines, resulting in the dismissal of his appeals. Even after this Court proposed an increased sanction and granted him more time to file a brief, Mr. Crabtree chose to do nothing at all. His lack of action is unsurprisingly consistent with the pattern of misconduct he showed in representing his former clients.

We note that Tennessee requires at least thirty days of active suspension, and the ABA Standards contemplate suspensions of no less than six months. Tenn. Sup. Ct. R. 9, § 12.2(a); ABA Standard 2.3. Therefore, based on the above analysis, and in consideration of the parameters in Rule 9 and in the ABA Standards for minimum suspensions, as well as the Board's requests, we conclude that the circumstances of this case warrant imposition of a three-year suspension, with one year served as active suspension and the remainder on probation. During the first year of the probationary period, Mr. Crabtree shall engage a practice monitor at his own expense to supervise his compliance with trust account rules, accounting procedures, and office management procedures in accordance with Tennessee Supreme Court Rule 9, section 12.9. Finally, as a condition of reinstatement, Mr. Crabtree shall complete twelve hours of CLE, with six hours focused on ethics and six hours on law office management, in addition to the fifteen-hour annual CLE requirement. In all other respects, the decision of the Hearing Panel is affirmed.

The conditions of reinstatement are consistent with the purposes of the attorney disciplinary process: to "safeguard the administration of justice, protect the public from the misconduct or unfitness of members of the legal profession, and preserve the confidence of the public in the integrity and trustworthiness of lawyers in general." *In re Cope*, 549 S.W.3d 71, 76-77 (Tenn. 2018) (quoting *Hornbeck v. Bd. Of Prof'l Resp.*, 545 S.W.3d 386, 396-97 (Tenn. 2018)); *see also* ABA Standard 1.1.

### IV. CONCLUSION

Based on our careful consideration of the entire record "with a view to attaining uniformity of punishment throughout the State and appropriateness of punishment under the circumstances of each particular case," we modify the judgment of the Hearing Panel to impose a three-year suspension, with one year served as active suspension and the remainder on probation. Tenn. Sup. Ct. R. 9, § 15.4 (b), (d). In all other respects, including

the conditions set forth above, payment of restitution to his clients, and reimbursement to TLFCP, the decision of the Hearing Panel is affirmed. Costs in this Court shall be paid by Joseph H. Crabtree, Jr., for which execution may issue if necessary.

_____
ROGER A. PAGE, CHIEF JUSTICE